UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TIMOTHY DEMON MOORE,
    Petitioner,

v.                                                              Case No. 8:23-cv-710-KKM-TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS,
    Respondent.
_____

## ORDER

Moore, a Florida prisoner, timely[1] filed a pro se Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. (Doc. 1.) Having considered the petition, (*id.*), the supporting memorandum, (Doc. 2), and the response in opposition, (Doc. 9), the petition is denied.[2]

---

[1] A state prisoner has one year from the date his judgment becomes final to file a § 2254 petition. *See* § 2244(d)(1). This one-year limitation period is tolled during the pendency of a properly filed state motion seeking collateral relief. *See* § 2244(d)(2). The state appellate court affirmed Moore's convictions and sentence on November 22, 2017. (Doc. 9-2, Ex. 10.) Moore's judgment became final 90 days later, on February 20, 2018, when the time to petition the Supreme Court of the United States for a writ of certiorari expired. *See Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002). After 98 days of untolled time, Moore filed a motion to correct an illegal sentence on May 30, 2018. (Doc. 9-2, Ex. 12.) The motion remained pending until the state appellate court's mandate issued on January 30, 2019. (Doc. 9-2, Ex. 17.) By that time, Moore had filed his motion for postconviction relief on October 15, 2018. (Doc. 9-2, Ex. 18.) This motion was pending until the mandate issued on April 4, 2023. (Doc. 9-2, Ex. 31.) Before that date, on March 28, 2023, Moore filed his § 2254 petition. (Doc. 1, p. 1.) Because less than one year of untolled time elapsed, Moore's petition is timely.

[2] Moore did not file a reply.

1

Because reasonable jurists would not disagree, a certificate of appealability also is not warranted.

## I. INTRODUCTION

### A. Procedural Background

A state court jury convicted Moore of burglary of an occupied dwelling, criminal mischief, battery on a law enforcement officer, and resisting an officer with violence. (Doc. 9-2, Ex. 4.) The state trial court sentenced Moore to an overall term of 30 years in prison. (Doc. 9-2, Ex. 6.) The state appellate court per curiam affirmed his judgment and sentence. (Doc. 9-2, Ex. 10.) Moore unsuccessfully sought postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 9-2, Exs. 18-25.) The state appellate court per curiam affirmed the denial of relief. (Doc. 9-2, Ex. 30.)

### B. Factual Background[3]

Three brothers, Dennell Taylor (Dennell), Karey Taylor (Karey), and Gerald Abdul-Aziz, lived together in an apartment in Tampa, Florida. (Doc. 9-2, Ex. 3, pp. 157-58.) Dennell's girlfriend, Roberta Moore (Roberta), also lived in the apartment. (*Id.*) Dennell's name was on the lease and he took charge of the apartment; he explained that "[i]f [others] don't do what I say, they go." (*Id.*, pp. 211, 243-44.) If Dennell and Roberta were not present, Abdul-Aziz was in charge of the apartment. (*Id.*, pp. 214, 243.)

---

[3] This factual summary is based on the trial transcript and appellate briefs.

On the morning of February 2, 2016, Abdul-Aziz and Roberta were at the apartment. (*Id.*, pp. 162-63.) Dennell was out of town. (*Id.*, pp. 162, 229.) Police arrived and arrested Roberta. (*Id.*, pp. 162-63.) That evening, Roberta's brother, Petitioner Timothy Demon Moore (Moore), came to the apartment. (*Id.*, pp. 164-65.) Abdul-Aziz and Karey were there. (*Id.*, p. 170.) After Moore and Abdul-Aziz fought outside and Moore damaged several vehicles, Abdul-Aziz went inside the apartment and locked the door. (*Id.*, pp. 166-69.) Moore kicked the front door open and went inside, where he threw a big-screen television to the floor before Abdul-Aziz grabbed him and forced him out of the apartment. (*Id.*, pp. 170-71.)

Abdul-Aziz testified that Moore did not have permission to enter the apartment that night. He stated that no one had invited Moore, that Moore did not have a key, and that the others did not invite him over if Roberta was gone. (*Id.*, pp. 184, 215-16.) Dennell also testified that he did not give Moore permission to be in the apartment that day. (*Id.*, pp. 229, 239.) Abdul-Aziz and Dennell both testified that Moore visited the apartment infrequently. (*Id.*, p. 215, 240.)

## II. STANDARD OF REVIEW UNDER SECTION 2254

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief under the AEDPA can be granted only if a petitioner is in custody "in violation of the

3

Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "The power of the federal courts to grant a writ of habeas corpus setting aside a state prisoner's conviction on a claim that his conviction was obtained in violation of the United States Constitution is strictly circumscribed." *Green v. Sec'y, Dep't of Corr.*, 28 F.4th 1089, 1093 (11th Cir. 2022).

Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of § 2254(d)(1), the phrase "clearly established Federal law" encompasses the holdings only of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). This section "defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court." *Id.* at 404. First, a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court

decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413.

Second, a decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. As a result, to obtain relief under the AEDPA, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that "[t]he state court's application of clearly established federal law must be objectively unreasonable" for a federal habeas petitioner to prevail and that the state court's "clear error" is insufficient).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and

5

defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). But the habeas court is "not limited by the particular justifications the state court provided for its reasons, and [it] may consider additional rationales that support the state court's determination." *Jennings v. Sec'y, Fla. Dep't of Corr.*, 55 F.4th 1277, 1292 (11th Cir. 2022). When the relevant state-court decision is not accompanied with reasons for the decision—such as a summary affirmance without discussion—the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192. The state may "rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Id.*

For purposes of § 2254(d)(2), "it is not enough to show that 'reasonable minds reviewing the record might disagree about the finding in question.'" *Brown v. Davenport*, 142 S. Ct. 1510, 1525 (2022) (quotations omitted). "An unreasonable determination of the facts occurs when the direction of the evidence, viewed cumulatively, was too powerful to conclude anything but the petitioners factual claim." *Teasley v. Warden, Macon State Prison*, 978 F.3d 1349, 1355 (11th Cir. 2020) (internal quotation marks and alterations omitted). A state court's findings of fact are presumed correct, and a petitioner can rebut

6

the presumption of correctness afforded to a state court's factual findings only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Even where a petitioner succeeds in rebutting the presumption, he must show that the state court's decision is "based on" the incorrect factual determination. *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022). This is because a state court decision may still be reasonable "even if some of the state court's individual factual findings were erroneous—so long as the decision, taken as a whole, doesn't constitute an 'unreasonable determination of the facts' and isn't 'based on' any such determination." *Id.* (quoting *Hayes v. Sec'y, Fla. Dep't of Corr.*, 10 F.4th 1203, 1224–25 (11th Cir. 2021) (Newsom, J., concurring)).

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Moore brings a claim for ineffective assistance of trial counsel. Under the well-known, two-part standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), to succeed, he must show both deficient performance by his counsel and prejudice resulting from those errors. *Id.* at 687.

The first part "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The lynchpin of this analysis is whether counsel's conduct "was reasonable considering all the circumstances." *Id.* at 688. A petitioner establishes deficient performance if "the

identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

The second part requires showing that the deficient performance prejudiced the defense. *Id.* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Consequently, federal petitioners rarely prevail on claims of ineffective assistance of counsel because "[t]he standards created by *Strickland*

8

and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation and citations omitted).

IV. <u>ANALYSIS</u>

### A. Ground One

In his sole claim, Moore argues that trial counsel was ineffective for failing to investigate and call his sister Roberta. Moore contends that Roberta would have testified that he had a "standing invitation" to enter the apartment. (Doc. 1, p. 4.) He also asserts that Roberta would have testified that Moore "had earlier brought her money for rent and inquired by suggestion of having a barbeque at the residence later that day." (*Id.*)

Moore asserts that Roberta's testimony would have "established and supported a consent defense." (Doc. 1, p. 4.) Florida law defines burglary in relevant part as the entering of "a dwelling . . . with the intent to commit an offense therein, unless . . . the defendant is licensed or invited to enter." § 810.02(1)(b)(1), Fla. Stat. Thus, "[c]onsent to enter a premises is an affirmative defense to the charge of burglary." *Petrucelli v. State*, 855 So.2d 150, 154 (Fla. 2d DCA 2003). Moore also argues that Abdul-Aziz was not credible and that his testimony would have been outweighed by Roberta's testimony.

Roberta testified at an evidentiary hearing that Moore had a standing invitation to enter the apartment regardless of whether she was present. (Doc. 9-2, Ex. 24, p. 26.) Although this invitation was not expressly stated, Roberta testified, Moore knew that he

9

was welcome at the apartment, and he sometimes came in without knocking. (*Id.*, pp. 26-27.) Roberta stated that she informed counsel that she wanted to testify on Moore's behalf. (*Id.*, pp. 29-30.)

Moore also testified that he had a standing invitation to enter the apartment at any time and that he went there regularly, "[a]lmost five times a day." (*Id.*, pp. 8-9, 21.) Moore testified that he "ran in . . . behind" Abdul-Aziz inside the apartment on the night of the incident, and that no one ever told him that he was not allowed into the apartment. (*Id.*, pp. 10, 21-22.) Moore stated that he told counsel that he wanted Roberta to testify. (*Id.*, pp. 10-11.)

Counsel testified that he telephoned Roberta after Moore said that she could testify to his permission to enter the apartment. (*Id.*, p. 45.) But counsel testified that Roberta told him that Moore could enter the apartment when she was there—not that he had a standing invitation. (*Id.*)

Counsel testified that Roberta "was not willing to come testify" that Moore had a standing invitation, and that he had the "distinct impression" that Roberta did not want to testify at all. (*Id.*, pp. 45-46.) Thus, counsel was concerned that Roberta's testimony would not be favorable to Moore. (*Id.*, p. 47.) And even assuming that Roberta offered favorable testimony, counsel testified, her statements would conflict with other witnesses' testimony that Moore did not have permission to enter the apartment. (*Id.*, pp. 47-48.) Counsel also

10

testified that Roberta offered to try to persuade Dennell to say that Moore had a standing invitation—even though Roberta knew that such a statement conflicted with Dennell's deposition testimony. (*Id.*, pp. 45-46.)

The state court found that Moore failed to establish deficient performance. (Doc. 9-2, Ex. 25, p. 5.) The state court found counsel's testimony more credible than that of Moore and Roberta. (*Id.*) The state court found Roberta not credible in part because she admitted at the evidentiary hearing that she wanted Dennell to testify inconsistently with his deposition testimony. (*Id.*)

Based on the evidentiary hearing testimony, the state court found that counsel contacted Roberta, who told him that Moore could enter the apartment if she was present but that Moore did not have a standing invitation. (*Id.*) Thus, the state court found, counsel made a reasonable strategic decision not to call Roberta "in light of the unfavorable testimony he anticipated she would give." (*Id.*, pp. 5-6.)

Moore has not shown that the state court unreasonably denied his claim. Moore does not rebut by clear and convincing evidence the presumption of correctness that applies to the state court's finding that counsel's testimony was credible. *See Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006) ("The factual findings of the state court, including the credibility findings, are presumed to be correct unless [the petitioner] rebuts the presumption by clear and convincing evidence." (citing 28 U.S.C. § 2254(e)(1)). Nor does

Moore rebut the presumption of correctness afforded to the state court's finding that counsel's decision was strategic. *See Franks v. GDCP Warden*, 975 F.3d 1165, 1176 (11th Cir. 2020) ("The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct." (quoting *Provenzano v. Singletary*, 148 F.3d 1327, 1330 (11th Cir. 1998))).

Counsel's strategic decisions "are entitled to a 'strong presumption' of reasonableness." *Dunn v. Reeves*, 594 U.S. 731, 739 (2021) (quoting *Harrington v. Richter*, 562 U.S. 86, 104 (2011)); *see also Knight v. Fla. Dep't of Corr.*, 936 F.3d 1322, 1340 (11th Cir. 2019) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." (quoting *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995))).

A strategic decision does not amount to ineffective assistance unless it is patently unreasonable. *See Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) (stating that counsel's strategic decision "will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it" even when the decision "appears to have been unwise in retrospect") (citation omitted); *Franks*, 975 F.3d at 1176 ("Because *Strickland* allows for a range of strategic choices by trial counsel, so too is there considerable leeway for state courts to determine the

12

reasonableness of those choices. . . . For Franks to prevail, then, he would have to show that *no* reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct.").

Counsel's strategic decision was reasonable. The testimony that the state trial court found credible shows that Roberta told counsel that Moore could enter the apartment when she was there. That information would not have supported a consent defense because Roberta was not present when Moore entered the apartment. She had been arrested earlier that day; only Abdul-Aziz and Karey were at home when Moore arrived. (Doc. 9-2, Ex. 3, p. 162.) Thus, counsel reasonably concluded that Roberta would not offer helpful testimony. Counsel also noted that even assuming Roberta gave favorable testimony, her statements would contradict Abdul-Aziz and Dennell's testimony that Moore did not have permission to go into the apartment. Moore only speculates that the jury would have believed Roberta over the other witnesses. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that a petitioner's "unsupported allegations" that are "conclusory in nature and lacking factual substantiation" cannot sustain an ineffective assistance claim).

Moore has not shown that counsel made a patently unreasonable decision not to call Roberta as a defense witness. As Moore has not established that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim, he is not entitled to relief on Ground One.

V.  **CERTIFICATE OF APPEALABILITY**

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Instead, a district court or court of appeals must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA, Moore must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Moore has not made the requisite showing. Finally, because Moore is not entitled to a COA, he is not entitled to appeal in forma pauperis.

It is therefore **ORDERED** that Moore's Petition for Writ of Habeas Corpus, (Doc. 1), is **DENIED**. The **CLERK** is directed to enter judgment against Moore and in Respondent's favor and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on November 4, 2024.

Kathryn Kimball Mizelle
United States District Judge

14